## SAMUELS et ux,
*Appellants,*

*v.*

## KEY TITLE COMPANY,
## dba KEY ESCROW COMPANY,
*Respondent.*

### (124990; A26032)

665 P2d 362

Robert L. Engle, Woodburn, argued the cause for appellants. With him on the briefs was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

Kathleen A. Evans, Salem, argued the cause for respondent. With her on the brief was Crothers & Crandall, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiffs appeal the trial court's order dismissing their unlawful trade practices count and the trial court's judgment for defendant after trial on another count. They contend that the judgment was based on findings not responsive to the pleadings. We affirm.

Plaintiffs brought an action against defendant escrow company to recover damages they incurred after the purchaser of their business declared bankruptcy. Montel purchased the business. The purchase was financed in part by Alpenrose Dairy, and plaintiffs agreed to take a security interest subordinate to Alpenrose. It took several months to close the sale because of delay in Montel's obtaining a liquor license. Between the signing of the escrow papers and the closing, Montel conducted the business under a management agreement with plaintiffs. Before the sale was closed, Montel apparently contracted to purchase inventory and goods from American-Strevell, and he signed a UCC security form which American-Strevell filed with the Secretary of State prior to closing. That placed American-Strevell in a superior security position over both Alpenrose and plaintiffs. The filing was not discovered until after closing. Plaintiffs and Montel had agreed that $15,000 of the purchase price for the business would come from the sale of Montel's home, either in cash if his home were sold before the closing, or by a promissory note to be paid on sale of the home. Defendant was to prepare that note. As prepared, the note made no provision for a mortgage or other security interest in favor of plaintiffs. Within a few months after closing, Montel declared bankruptcy.

Plaintiffs sued to recover the balance of the purchase price unpaid due to Montel's bankruptcy, their lack of a security interest on the $15,000 note and their position as third security interest holder on the assets of the grocery business, instead of the second security position that they thought they had. Their action was based on defendant's failure to (1) discover the interest of American-Strevell prior to closing and (2) provide for security for the $15,000 note.

One of plaintiff's counts sought damages for violation of the Unlawful Trade Practices Act, ORS 646.605 *et seq.* Defendant moved to dismiss that count on the ground that the

complaint failed to allege ultimate facts showing that defendant made representations that are actionable under the Act. Plaintiffs made the following allegations:

"That the defendant, by and through its agent, represented to the plaintiffs, as follows:

"(a) That at the closing of the escrow, the plaintiffs would receive a second priority perfected security interest in the personal property which was the subject of the sale;

"(b) That plaintiffs would receive, at the time of closing, a perfected security interest of certain separate real property owned by the buyer of the business, which would secure a promissory note given as consideration for the sale of the business;

"(c) That the defendant would perform its obligations in a generally accepted manner;

"(d) That the defendant would close the transaction, in accordance with the written directions and intentions of the parties, with reasonable diligence."

Plaintiffs contend that the foregoing constitute allegations of representations that defendant's services (1) had the characteristics, benefits and qualities which they ultimately failed to have (ORS 646.608(1)(e)), and (2) were of a standard and quality that they were not. ORS 646.608(1)(g). We conclude that the trial court correctly granted defendant's motion to dismiss plaintiffs' unlawful trade practices count. *See Denson v. Ron Tonkin Gran Turismo, Inc.,* 279 Or 85, 92, 566 P2d 1177 (1977); *but see Abrams v. Mike Salta Pontiac,* 51 Or App 495, 625 P2d 1383, *rev den* 291 Or 151 (1981).

Plantiffs next assign as error the trial court's failure to make findings of fact responsive to the issues framed by the pleadings. They challenge the findings made as unsupported by any substantial evidence in the record. The trial judge informed the parties of his decision in a letter that contained the following language:

"The Court finds that the advice given to Plaintiffs by their attorney, Betty Jo White, Esq., was good and adequate and Plaintiffs themselves failed to heed the advice, keep their attorney informed and relied on the advice of the realtor. 'A person intends the ordinary consequences of a voluntary act.' ORS 40.135(1)(a)(L) 'Private transactions have been fair and

regular.' 'A reasonably prudent person reads and understands that which he signs.'

"The Court is of the opinion that the bankruptcy of Montel caused the loss to Plaintiff and the actions of Plaintiffs themselves put Montel in possession of the property."

Plaintiffs contend that this language constitutes special findings of fact and conclusions of law. We disagree.

Neither party requested special findings. In the absence of a demand for special findings, the trial court may make either general or special findings. ORCP 62 A. The court may issue findings of fact in any form it desires, so long as its intent to accord to its statements the character of findings fact can be determined. *Wells v. Davis,* 258 Or 93, 96-7, 480 P2d 699 (1971). A letter from the court to counsel can constitute findings if the court indicates that such was its intention. *State Highway Com. v. Brassfield, et al,* 228 Or 145, 149, 363 P2d 1075 (1961).

At the close of trial, the judge gave no indication that he intended to make special findings. The last paragraph of his letter states "Judgment for Defendant. Mr. Crothers [defendant's attorney] may present the Order, forthwith." The judge accurately framed the legal issue in his letter but made no reference to the observations that followed as findings of fact pertaining to that issue. We are unable to find any judicial intent to make special findings. We conclude that the judge's observations were casual reflections on how plaintiffs had arrived at the situation of which they complained and that they were not findings or conclusions on which he based his judgment.

Affirmed.