Submitted September 12, affirmed November 1, 1961

MATTILA ET UX *v.* OLSVICK

365 P. 2d 1072

James P. Cronan, Jr., Portland, for appellants.

No appearance for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, O'Connell and Goodwin, Justices.

WARNER, J.

This is an action for damages arising out of an alleged breach of contract for services. The case was tried before the court without a jury. From a judgment in favor of the defendant, the plaintiffs appeal. There is no appearance in behalf of the defendant.

Plaintiffs were the owners of a lot upon which they desired to build and did build a home. Their deed described the property as Lot 16, "except that portion thereof which lies northwesterly of a line drawn parallel with and 14 feet southeasterly from the line between Lots 15 and 16, all in Block 4, West Slope, in the City of Astoria."

The defendant Olsvick was a professional engineer licensed by the state of Oregon. Preliminarily to the construction of the house, the services of Olsvick were obtained to survey said premises and furnish a map showing the locations of the corners of said tract for the guidance of plaintiffs and their contractor, Charles Antilla. Plaintiffs allege that instead of showing the

exception as described in their deed, the map supplied by defendant was erroneous in that the exception was in the map described as "the northerly 14 feet [of Lot 16]." As a result of the misdescription, plaintiffs' home was constructed on said parcel in a manner which slightly encroached on an adjoining tract of land. The encroachment led to a suit by the owner of the adjoining tract and a judgment against plaintiffs for damages in the amount of $681.53. Plaintiffs seek to recover that amount and a further sum for depreciation in the value of their premises.

The defendant Olsvick answered with a general denial and a further and separate answer, alleging that Charles Antilla at the time of said contemplated improvements on Lot 16 "was acting on behalf of the plaintiffs, with full authority to bind their interests * * *, and as their agent, and within the full scope of his authority; that defendant at all times acted in reliance upon the apparent authority of said agent." Olsvick further alleges that Antilla "came into defendants place of business and pointing to a plat of the West Slope Addition * * * requested the defendant to set the property lines of Lot 16 * * * omitting the back or Northerly 14 feet thereof and drew a pencil line on said plat indicating the portion to be omitted from said survey, stating plaintiff did not own that portion." Olsvick thereafter prepared said map as directed by Antilla and set the corners of the premises accordingly. Olsvick claims that the damage was a result of a want of exercise of due diligence and caution upon the part of the plaintiffs and their agent in failing to compare said map with plaintiffs' deed before erecting their home on Lot 16.

Plaintiffs' demurrer to defendant's separate answer and defense was overruled. This was followed

by plaintiffs' reply, wherein they admit, among other things, "that defendant was retained by the contractor," notwithstanding their complaint alleged that defendant was retained by plaintiffs.

Plaintiffs rely upon two assignments of error. The first is: "The court erred in overruling plaintiffs' demurrer to the affirmative defense and in entering Finding No. 11 over plaintiffs' objection."

Finding No. 11 reads:

"That defendant at all times acted in reliance upon the real and apparent scope of the authority of plaintiffs' agent, Charles W. Antilla, and fully complied with his directions and orders in making said survey and was entitled to rely upon his real or apparent authority."

Reading the argument which follows this assignment, we find it difficult to ascertain whether it is addressed to the insufficiency of the allegations of defendant's further defense or to the insufficiency of facts in support of the challenged finding, or both. In its forepart, plaintiffs say: "The affirmative defense to this contract alleges *apparent authority* in plaintiffs' agent to state to defendant the exception to plaintiffs' land and that the defendant relied on the statement." (Emphasis supplied.) In the last paragraph of the argument in support of this assignment they say: "The record before this Court contains an affirmative defense which lacks the facts showing a right to rely."

Between the earlier and last-quoted statements concerning the demurrer are found statements and many citations relating to the apparent authority of an agent, the reasonable appearance of authority, justifiable reliance in apparent authority, mere blind reliance on apparent authority, etc. All of the citations

when examined are found to rest upon the quality of proof necessary to prove an apparent agency or the scope of agent's authority. The cases which plaintiffs rely upon do not challenge the sufficiency of the pleadings and are apparently addressed to the quality of proof which plaintiffs are claiming is wanting as essential to the support of Finding No. 11.

If it was the plaintiffs' purpose to demonstrate that defendant was obligated to say more than appears in his pleading of affirmative defense, then we think his argument on the demurrer was without merit and would so hold independent of the rule to which we now make reference.

■ Any question as to the agency of Antilla and the scope thereof in behalf of the Mattilas, as his principals, is dispatched by the following cases: *Cram v. Tippery,* 175 Or 575, 155 P2d 558; *McLeod v. Despain,* 49 Or 536, 552, 90 P 492, 92 P 1088. In *Cram,* supra, we held that one of the most unequivocal methods of showing a ratification of an agent's authority was to bring an action based upon the agent's acts, just as plaintiffs have done here. (175 Or at 580) We further declared (at p 581) in the same case: " 'no rule of law is more fundamental than if the principal elects to ratify any part of the unauthorized act of an agent he must ratify the whole,' " citing *La Grande National Bank v. Blum,* 27 Or 215, at 217, 41 P 659.

■ The trial court file does not include a transcript of the testimony, in whole or in part, nor a narrative statement in lieu thereof. ORS 19.088. Under the circumstances we are limited to a consideration of the pleadings, but when the action was tried by the court without a jury, as was done in this case, we will also determine whether the findings of fact support the

judgment. *St. Clair v. Jelinek,* 187 Or 151, 157, 210 P2d 563, and cases cited.

■  We have, therefore, examined the findings made by the court, with particular attention to Finding No. 11, and find that all of them are within the issues made by the pleadings and together support the judgment.

■  Plaintiffs' second and last assignment of error is addressed to the sufficiency of the affirmative defense because it "did not plead that the representation relied on was the proximate cause of plaintiffs' loss."

The phrase "proximate cause" is part of the language of torts, familiar to negligence cases and is used almost exclusively in that area of the law, where it connotes the efficient cause of an injury for which damages are sought. Occasionally, we find it employed in actions arising out of accident insurance and indemnity policies invoking recovery on death or injury claims, when the "proximate cause" of the loss is under circumstances creating liability according to the terms of such contracts. We know of no authority, nor have plaintiffs cited us to any, which compels the conclusion that the words "proximate cause" were necessary. to a sufficient statement of the affirmative defense tendered by the defendant. Their inclusion would have been mere surplusage.

Affirmed.